AO 106 (Rev. 04/10)  Application for a Search Warrant

# UNITED STATES DISTRICT COURT
### for the
### District of South Dakota

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) | Case No.  5:20-mj-147 |
| INFORMATION THAT IS STORED AT PREMISES CONTROLLED BY GOOGLE | ) ) ) | **SEALED** |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

SEE "ATTACHMENT A", which is attached to and incorporated in this Application and Affidavit.

located in the _____ District of _____ **South Dakota** _____ , there is now concealed *(identify the person or describe the property to be seized)*:

SEE "ATTACHMENT B", which is attached to and incorporated in this Application and Affidavit.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | *Offense Description* |
|---|---|
| Second Degree Murder | 18 U.S.C. §§ 1153 and 1111(a) |
| False Statement | 18 U.S.C. § 1001 |

The application is based on these facts:

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

**FBI SA Christopher Reinke**
*Printed name and title*

Sworn to before me and: [ ] signed in my presence.
☒ Submitted, attested to and acknowledged by reliable electronic means.

_____
*Judge's signature*

Date:  7/27/20

City and state:  Rapid City, SD

**Daneta Wollmann, U.S. Magistrate Judge**
*Printed name and title*

AO 93  (Rev. 11/13) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT

for the

District of South Dakota

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched* | ) | |
| *or identify the person by name and address)* | ) | Case No.  5:20-mu-147 |
| INFORMATION THAT IS STORED AT | ) | |
| PREMISES CONTROLLED BY GOOGLE | ) | **SEALED** |
| | ) | |

## SEARCH AND SEIZURE WARRANT

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____ District of _____ South Dakota
*(identify the person or describe the property to be searched and give its location)*:

See ATTACHMENT A, attached hereto and incorporated by reference.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

Evidence of the crimes of Second Degree Murder, in violation of 18 U.S.C. §§ 1153 and 1111(a) and False Statement, in violation of 18 U.S.C. § 1001, as described in ATTACHMENT B, attached hereto and incorporated by reference.

I find that the affidavit, or any recorded testimony, establishes probable cause to search and seize the person or property.

**YOU ARE COMMANDED** to execute this warrant on or before _____August 11, 2020_____ *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m.   ☒ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____Daneta Wollmann_____.
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)*   ☐ until, the facts justifying, the later specific date of _____.

Date and time issued:      7/27/20 at 8.45 a.m._____      _____*signature*_____
*Judge's signature*

City and state:      Rapid City, SD_____      Daneta Wollmann, U.S. Magistrate Judge
*Printed name and title*

CC: AUSA and Agent - slt

AO 93  (Rev. 11/13) Search and Seizure Warrant (Page 2)

| Return | | |
|---|---|---|
| Case No.:<br> 5:20-mj-147 | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name of any person(s) seized:

| Certification |
|---|

      I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.


Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION THAT IS STORED AT PREMISES CONTROLLED BY GOOGLE | **FILED UNDER SEAL** <br><br> Case No. 5:20-mj-147 |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Christopher Reinke, Special Agent with the Federal Bureau of Investigation being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.      I make this affidavit in support of an application for a warrant to search information that is stored at premises controlled by Google, a provider of electronic communications service and remote computing service headquartered in Mountain View, California.  The information to be searched is described in the following paragraphs and in Attachment A.  This affidavit is made in support of an application for a warrant under 18 U.S.C. § 2703(c)(1)(A) to require Google to disclose to the government the information further described in Attachment B.I. The government will then review that information and seize the information that is further described in Attachment B.II.

2.      I am a Special Agent (SA) with the Federal Bureau of Investigation (FBI), and I am assigned to the Rapid City Resident Agency, Rapid City, South Dakota.  I have approximately five years of law enforcement experience with the

FBI as a Special Agent.   During that time, I have investigated federal crimes occurring within Indian country, including violations of 18 U.S.C. §§ 1153 and 1111(a), Second Degree Murder.

3.     This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4.     Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. §§ 1153 and 1111(a) – Second Degree Murder, 18 U.S.C. § 1001 have been committed.  There is also probable cause to search the information described in Attachment A for evidence of these crimes further described in Attachment B.

## JURISDICTION

5.     This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711.  Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

## BACKGROUND RELATING TO GOOGLE AND RELEVANT TECHNOLOGY

6.     Based on my training and experience, I know that cellular devices, such as mobile telephone(s), are wireless devices that enable their users to send and receive wire and/or electronic communications using the networks provided by cellular service providers.   In order to send or receive communications, cellular devices connect to radio antennas that are part of the cellular network

2

called "cell sites," which can be mounted on towers, buildings, or other infrastructure. Cell sites provide service to specific geographic areas, although the service area of a given cell site will depend on factors including the distance between towers. As a result, information about what cell site a cellular device connected to at a specific time can provide the basis for an inference about the general geographic location of the device at that point.

7.     Based on my training and experience, I also know that many cellular devices such as mobile telephones have the capability to connect to wireless Internet ("wi-fi") access points if a user enables wi-fi connectivity. Wi-fi access points, such as those created through the use of a router and offered in places such as homes, hotels, airports, and coffee shops, are identified by a service set identifier ("SSID") that functions as the name of the wi-fi network. In general, devices with wi-fi capability routinely scan their environment to determine what wi-fi access points are within range and will display the names of networks within range under the device's wi-fi settings.

8.     Based on my training and experience, I also know that many cellular devices feature Bluetooth functionality.     Bluetooth allows for short-range wireless connections between devices, such as between a mobile device and Bluetooth-enabled headphones. Bluetooth uses radio waves to allow the devices to exchange information. When Bluetooth is enabled, a mobile device routinely scans its environment to identify Bluetooth devices, which emit beacons that can

3

be detected by mobile devices within the Bluetooth device's transmission range, to which it might connect.

9.      Based on my training and experience, I also know that many cellular devices, such as mobile telephones, include global positioning system ("GPS") technology.   Using this technology, the phone can determine its precise geographical coordinates.  If permitted by the user, this information is often used by apps installed on a device as part of the app's operation.

10.      Based on my training and experience, I know Google is a company that, among other things, offers an operating system ("OS") for mobile devices, including cellular phones, known as Android.  Nearly every cellular phone using the Android operating system has an associated Google account, and users are prompted to add a Google account when they first turn on a new Android device.

11.      In addition, based on my training and experience, I know that Google is offers numerous online-based services, including email (Gmail), navigation (Google Maps), search engine (Google), online file storage (including Google Drive, Google Photos, and Youtube), messaging (Google Hangouts and Google Allo), and video calling (Google Duo).  Some services, such as Gmail, online file storage, and messaging, require the user to sign in to the service using their Google account.  An individual can obtain a Google account by registering with Google, and the account identifier typically is in the form of a Gmail address.  Other services, such as Google Maps and Youtube, can be used while signed in to a

4

Google account, although some aspects of these services can be used even without being signed in to a Google account.

12.    In addition, based on my training and experience, I know Google offers an Internet browser known as Chrome that can be used on both computers and mobile devices.  A user has the ability to sign in to a Google account while using Chrome, which allows the user's bookmarks, browsing history, and other settings to be synced across the various devices on which they may use the Chrome browsing software, although Chrome can also be used without signing into a Google account.  Chrome is not limited to mobile devices running the Android operating system and can also be installed and used on Apple devices.

13.    Based on my training and experience, I know that, in the context of mobile devices, Google's cloud-based services can be accessed either via the device's Internet browser or via apps offered by Google that have been downloaded onto the device.  Google apps exist for, and can be downloaded to, phones that do not run the Android operating system, such as Apple devices.

14.    Based on my training and experience, I know that Google collects and retains location data from devices running the Android operating system when the user has enabled Google location services.  Google then uses this information for various purposes, including to tailor search results based on the user's location, to determine the user's location when Google Maps is used, and to provide location-based advertising.  In addition, I know that Google collects and retains data from non-Android devices that run Google apps if the user has

enabled location sharing with Google.  Google typically associates the collected location information with the Google account associated with the Android device and/or that is signed in via the relevant Google app.  The location information collected by Google is derived from sources including GPS data, information about the cell sites within range of the mobile device, and information about wi-fi access points and Bluetooth beacons within range of the mobile device.

15.    Based on my training and experience, I also known that Google collects and retains information about the user's location if the user has enabled Google to track web and app activity.  According to Google, when this setting is enabled, Google saves information including the user's location and Internet Protocol address at the time they engage in certain Internet- and app- based activity and associates this information with the Google account associated with the Android device and/or that is signed in with the relevant Google app.

16.    Location data, such as the location data in the possession of Google, can assist in a criminal investigation in various ways.  As relevant here, I know based on my training and experience that Google has the ability to determine, based on location data collected via the use of Google products as described above, mobile devices that were in a particular geographic area during a particular time frame and to determine which Google account(s) those devices are associated with.  Among other things, this information can inculpate or exculpate a Google account holder by showing that he was, or was not, near a given location at a time relevant to the criminal investigation.

17.    Based on my training and experience, I know that when individuals register with Google for an account, Google asks subscribers to provide certain personal identifying information.  Such information can include the subscriber's full name, physical address, telephone numbers and other identifiers, alternative email addresses, and, for paying subscribers, means and source of payment (including any credit or bank account number).  In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users. Based on my training and my experience, I know that even if subscribers insert false information to conceal their identity, I know that this information often provide clues to their identity, location or illicit activities.

18.    Based on my training and experience, I also know that Google typically retains and can provide certain transactional information about the creation and use of each account on its system. This information can include the date on which the account was created, the length of service, records of login (i.e., session) times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account (such as logging into the account via the provider's website), and other log files that reflect usage of the account.  In addition, Google often has records of the Internet Protocol address ("IP address") used to register the account and the IP addresses associated with particular logins to the account.  Because every device that connects to the Internet must use an IP

7

address, IP address information can help to identify which computers or other devices were used to access the account.

## **PROBABLE CAUSE**

### *BACKGROUND*

19.　Shortly after 9:00 AM on June 29, 2020, Oglala Sioux Tribe Department of Public Safety received a call of a dead body near the intersection of Allen Road and BIA 63, near Allen, South Dakota.  The deceased was identified as 29-year old, Jerelle Long Solider (Long Solider).

20.　Long Solider had two lacerations to his back and numerous abrasions to his body.  Based on your affiant's training and experience, your affiant believes either Gerald Long Solider (Gerald) or Contessa Vasquez (Vasquez) struck and fatally injured Long Solider with Gerald's silver Chevy Impala on the evening of June 28, 2020, and left him for dead on the side of the road.

21.　Gerald told your affiant that he, Long Soldier, Vasquez and Gerald Long Solider, Sr. (Long Soldier, Sr.) went swimming at Angostura Reservoir on June 28, 2020.  Long Soldier, Sr. is the father of both Gerald and Long Solider.  According to Gerald, Long Soldier, Sr., was dropped off in Kyle on the way back from Angostura. The Long Soldiers and Vasquez consumed Fireball in a car on the way back from the lake.  According to Gerald, he, Long Soldier and Vasquez made it back by curfew, approximately 10:00-11:00 PM, to Gerald and Vasquez's house.  Vasquez and Gerald live at 2197 Chokecherry Road, a grey single family home, approximately 1-2 miles north of where Long Soldier's body was found.

8

22.    Your affiant learned from Gerald that Long Soldier was living in Rapid City with his girlfriend Taylor Jacobs.  According to Gerald, Long Soldier would come to Allen every few days to see family, even though he had been living in Rapid City.

23.    Gerald told your affiant that at approximately 11:00 PM, Long Soldier became agitated and was pacing back and forth in the living room.  Long Soldier stated, "they're writing my girl." Upon further clarification, Gerald opined to your affiant that unknown individuals were messaging his girlfriend, Taylor Jacobs via social media, Facebook.  Gerald told your affiant that he told Long Solider that he was going to go to bed and that Long Solider took the keys to the Impala and left at approximately midnight, after failing to convince Gerald to join him.  According to Gerald, he did not see Long Solider alive after approximately midnight.

24.    On July 3, 2020, your affiant interviewed Jacobs in Rapid City, SD. Jacobs accessed Facebook messages sent/received between Jacobs and Long Soldier on Sunday, June 28, 2020.  Of relevance, Long Soldier sent Jacobs a Facebook message at 7:41 PM telling Jacobs they were still at the Pizza Hut [in Hot Springs].[1]  At approximately 9:00 PM Long Soldier wrote to Jacobs:

Holy fuck had to jab my lotore (sic) brother up[,] Fucker was beating his girl cause she wanted to hold hands[.]

---

[1] On July 21, 2020, your affiant received Long Soldier's TracFone toll records.  Of note, a call was placed to the Hot Springs Pizza Hut at 7:18 PM from Long Soldier's phone.

9

25.     Your affiant determined this was a reference to Long Solider having to jab or fight his little brother (Gerald) for beating his girl (Vasquez) on the evening of June 28, 2020 at approximately 9:00 PM.  Jacobs responded to Long Soldier, but Long Soldier never replied to Jacobs.  Jacobs showed you affiant her cell phone in which the messages indicated Long Soldier had not read any of his messages after approximately 9:18 PM.  Based on your affiant's training and experience with Facebook, this would indicate that Long Soldier did not access his Facebook account to review the messages sent by Jacobs at any time after 9:18 PM.

26.     On Sunday June 28, 2020, at 9:43 AM Jacobs called Long Solider, and the call went unanswered.

27.     On July 21, 2020, your affiant received Long Soldier's TracFone toll records.  Of note, Long Soldier's call/data records indicate no activity after approximately 9:14 PM on June 28, 2020, which would coincide with Taylor's information that Long Solider was unresponsive after approximately 9:18 PM on June 28, 2020.

28.     Your affiant arrived to Vasquez' house on June 29, 2020, and observed the silver Chevy Impala.  The Impala had a large scratch on the passenger's side, consistent with scratch marks from a white fiber optic pole your affiant observe in the area of Long Soldier's body.  Behind the Impala your affiant observed a plastic container of wet wipes with red blood like substance on the wipes that were stuffed back into the container.  Your affiant observed

that the driver's side window was all the way down and the rear passenger's side window was half way down, perhaps indicating that there were occupants in the front and back of the Impala.

29.     A search of the vehicle was conducted in Rapid City.  There were items inside the car that appeared to have a red blood like substance on them. Including, but not limited to: one N95 mask, a coffee mug, a blue cloth and possible bloodstain on the driver's side door.  A steering wheel cover as well as clothing were located between the drivers' side seat and center console.

30.     Based on your affiant's training and experience, your affiant believes that the only individuals to access the silver Chevy Impala during the time Long Soldier was fatally struck by the car were Gerald and Vasquez.  Your affiant believes that after either Vasquez or Gerald struck Long Soldier, they returned the Impala to their residence, and inadvertently dropped the container of wet wipes on the ground behind the car.

31.     Your affiant spoke to SA Seymore who spoke with Long Soldier, Sr. on June 29, 2020, who advised that approximately 5:00 AM – 6:00 AM, Long Solider, Sr., arrived at Gerald and Vasquez's house and advised that the Impala had back-end damage and side damage.  FBI SA Kevin Seymore spoke with Long Soldier, Sr. and Naomi Sitting Bear (Sr.'s girlfriend) in greater detail on June 30, 2020.  Your affiant learned from SA Seymore that Long Solider, Sr. and Sitting Up traveled together (in Sitting Bear's vehicle) to Gerald and Vasquez's house. According to Sitting Bear, she waited in the car while Long Soldier, Sr. went

11

inside the residence to try and speak with Vasquez and Gerald about the damage to the vehicle. Your affiant learned from SA Seymore that Long Soldier, Sr. was unable to wake Gerald and Vasquez and that he left. When your affiant spoke to Gerald on July 10, 2020, about his father coming to his residence on the morning of June 29, 2020, Gerald stated that he recalled, presumably after speaking with his father, that someone was yelling "Ebert, Ebert!" on the morning of June 29, 2020.

### SUMMARY EVIDENCE REGARDING PROBABLE CAUSE

32. Your affiant is aware that Long Solider used a TracFone cell phone with number, 605-407-1157, that had internet capabilities. Your affiant is aware that Gerald's phone number is 605-515-2804, and that it had internet capabilities. Your affiant received a photograph from Gerald of a screen shot taken from Gerald's cell phone. Based on the appearance of the screen shot, your affiant believes the photograph is consistent with coming from an IPhone. Based on your affiant's training and experience, your affiant knows that IPhones offer many applications that utilize google maps, Gmail and other google capabilities. Finally, Vasquez's cell phone number is 605-515-2803, and it has internet capabilities. On June 29, 2020, Vasquez asked your affiant to retrieve her phone from the Chevy Impala. Your affiant did not locate her phone.

33. Your affiant received Long Soldier's cell phone's ESN, 103257939297807, from TracFone. ESN is an electronic serial number assigned to a cell phone with Internet capabilities.

34.    An IMEDI number is an International Mobile Equipment Identity number.  This is a unique identification number or serial number assigned to mobile phones and smartphones.  It is typically 15-17 digits in length and can be found on the back of the phone, in addition to being listed on a cell phone subscriber's phone bill.  It is similar to an ESN.

35.    Your affiant has requested records via subpoena from Verizon Wireless for toll records pertaining to Vasquez and Gerald cell phones.  Based on your affiant's experience, Verizon Wireless will return IMEI numbers corresponding to Gerald's and Vasquez's cell phones.

36.    Your affiant believes there is probable cause to require Google to supply your affiant with information, specifically IMEDI and ESN numbers pertaining to phones that came within the four corners of the Target search area to identify who was in the Target search area during the time Long Soldier was killed.  Your affiant believes that Long Solider was murdered shortly after 9:14 PM, based on his cell phone records.

37.    Specifically, your affiant believes there is probable cause to believe Google has information that Gerald provided a False Statement to your affiant. Specially, Gerald advised that he went to bed after Long Soldier became agitated and upset, after he (Long Solder) had read messages on Facebook.  According to Gerald, Long Soldier accessed his phone/Facebook at approximately 11:00 PM on June 28, 2020.  Your affiant has established that Long Soldier was not accessing his cell phone data after 9:14 PM on June 28, 2020.  See 20-MJ-140

13

SW.  Gerald told your affiant that he went to bed after his brother left the residence, at approximately midnight on the evening June 28, 2020. Additionally, Vasquez told SA Seymore on June 29, 2020, that she went to bed, shortly after arriving home (at around 10:00 PM) on June 28, 2020.  She also stated that Gerald had been complaining of chest pains and that she told him to sleep on the couch.  Gerald did not mention having chest pains to your affiant. Your affiant believes that Gerald has provided a False Statement regarding his whereabouts on the evening of June 28, 2020, and that there is probable cause to require Google to provide this information to your affiant sought in Attachment B.

38.    Your affiant is requesting a warrant authorizing the search and seizure of information stored and maintained by Google.  Specifically, your affiant is requesting information in Attachment B(I)(2).  This is anonymized information.  Once your affiant receives this information, your affiant will request subpoenas from cell phone providers to obtain the identities of individuals/cee phones who entered a particular location during a particular time period.  See Attachment B.   Thus, any individuals involved in the homicide of Long Soldier would have entered the four corners of the GPS locations provided in Attachment A.  Obtaining this information could eliminate or not eliminate either Vasquez or Gerald and being the individual who drove the vehicle, which struck and fatally injured Long Solider.  Obtaining this information could also assist in determining

14

who entered the four corners of the GPS location. This information would assist your affiant in understanding who was present for the homicide of Long Solider.

39. Based on the foregoing, I submit that there is probable cause to search information in the possession of Google relating to what devices were in the Target Location described in Attachment A during the time period described in Attachment A, as well as information that identifies the Google accounts with which those devices are associated, for evidence of the crime(s) at issue in this case. Among other things, this information can inculpate or exculpate a Google account holder by showing that he was, or was not, near a given location at a time relevant to the criminal investigation.

40. In order to facilitate the manageable disclosure of and search of this information, the proposed warrant contemplates that Google will disclose the information to the government in stages rather than disclose all of the information for which the government has established probable cause to search at once. Specifically, as described in Attachment B.I:

    a. Google will be required to disclose to the government an anonymized list of devices that specifies information including the corresponding unique device ID, timestamp, coordinates, and data source, if available, of the devices that reported their location within the Target Location described in Attachment A during the time period described in Attachment A.

15

b. The government will then review this list in order to prioritize the devices about which it wishes to obtain associated information.

c. Google will then be required to disclose to the government the information identifying the Google account(s) for those devices about which the government further inquires.

## CONCLUSION

41.   Based on the forgoing, I request that the Court issue the proposed warrant, pursuant to 18 U.S.C. § 2703(c).

42.   I further request that the Court direct Google to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control.   Because the warrant will be served on Google, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

## REQUEST FOR SEALING

43.   I further request that the Court order that all papers in support of this application, including the affidavit and warrant, be sealed until further order of the Court.   These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation.   Accordingly, there is good cause to seal these documents because their premature disclosure may give targets an opportunity to flee/continue flight from prosecution, destroy

16

or tamper with evidence, change patterns of behavior, notify confederates, or

otherwise seriously jeopardize the investigation.

Respectfully submitted,

Chris Reinke
Special Agent
Federal Bureau of Investigation

Sworn to before me and:
☐ signed in my presence.
☒ submitted, attested to, and acknowledged by reliable electronic means.

this _27th_ day of July, 2020.

Daneta Wollmann
United States Magistrate Judge

17

## ATTACHMENT A

## Property To Be Searched

This warrant is directed to Google LLC and applies to:

(1) location history data, sourced from methods including GPS, Wi-Fi,

and Bluetooth, generated from devices and that reported a device

location within the geographical region bounded by the latitudinal and

longitudinal coordinates, dates, and times below ("Initial Search

Parameters"); and

(2) identifying information for Google Accounts associated with the

responsive location history data.

### Search Parameters

Date/Time: **08:30 PM Mountain Standard Time Zone June 28, 2020
through 6:00 AM June 29, 2020 Mountain Standard Time Zone**

      **1) NW corner, 43.3028, -101.9615;**

      **2) NE corner, 43.3026, -101.9448;**

      **3) SE corner, 43.2895, -101.9429; and**

      **4) SW corner, 43.2906, -101.9608.**

## ATTACHMENT B

### Particular Items to Be Seized

### I.    Information to be disclosed by Google

Google shall provide responsive data (as described in Attachment A) to the government pursuant to the following process:

1.    Google shall query location history data based on the Initial Search Parameters specified in Attachment A.

2.    For each location point recorded within the Initial Search Parameters, Google shall produce to the government anonymized information specifying the corresponding unique device ID, timestamp, coordinates, display radius, and data source, if available (the "Anonymized List").

3.    The government shall review the Anonymized List in order to prioritize the devices about which it wishes to obtain identifying information.

4.    Google is required to disclose to the government identifying information, as defined in 18 U.S.C. § 2703(c)(2), for the Google Account associated with each device ID about which the government inquires.

## II.   Information to Be Seized

All information described above in Section I that constitutes evidence of violations of 18 U.S.C. §§ 1153, 1111, Second Degree Murder and 18 U.S.C. § 1001, False Statement have been committed, between June 28, 2020 (Location in Attachment A) and June 29, 2020.

## CERTIFICATE OF AUTHENTICITY OF DOMESTIC RECORDS PURSUANT TO FEDERAL RULES OF EVIDENCE 902(11) AND 902(13)

I, _____, attest, under penalties of perjury by the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this certification is true and correct.  I am employed by **GOOGLE LLC**, and my title is _____.  I am qualified to authenticate the records attached hereto because I am familiar with how the records were created, managed, stored, and retrieved.  I state that the records attached hereto are true duplicates of the original records in the custody of **GOOGLE LLC**  The attached records consist of _____ **[GENERALLY DESCRIBE RECORDS (pages/CDs/megabytes)]**.  I further state that:

a.    all records attached to this certificate were made at or near the time of the occurrence of the matter set forth by, or from information transmitted by, a person with knowledge of those matters, they were kept in the ordinary course of the regularly conducted business activity of **GOOGLE LLC**, and they were made by **GOOGLE LLC** as a regular practice; and

b.    such records were generated by **GOOGLE LLC** electronic process or system that produces an accurate result, to wit:

1.    the records were copied from electronic device(s), storage medium(s), or file(s) in the custody of **GOOGLE LLC** in a manner to ensure that they are true duplicates of the original records; and

2.    the process or system is regularly verified by **GOOGLE LLC** and at all times pertinent to the records certified here the process and system functioned properly and normally.

I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of the Federal Rules of Evidence.

_____     _____
Date                                                    Signature